Good morning. May it please the Court, Linda Griffiths, on behalf of Appellant Frank Owens. Mr. Owens has suffered from significant debilitating mental diseases for most of his life. The incident in this case occurred 1999, 1998, and prior to that time Mr. Owens had been hospitalized in at least five different mental hospitals and for the most part of those 20 years had taken antipsychotics, anticonvulsants, and other drugs to assist in his cognition. The issue in this case is ineffective assistance of counsel for failure to fully investigate and present a mental state defense at the time of Mr. Owens' trial. At the trial, the trial lawyer only tested the state evidence. He did not, however, bring any witnesses to testify on behalf of the defense, and he did not raise a mental state defense. Trial counsel was clearly aware of the fact that Mr. Owens had suffered for many years, and those documents have been attached to Appellant's excerpts of records beginning at, I think, page 61. Trial counsel knew that he had been hospitalized for many years. He knew that he had been diagnosed with schizophrenia and bipolar disease. He knew that at the time of the incident, Mr. Owens was on his way to his former girlfriend's house to get his medications and that Mr. Owens had not taken his psychotic medication for at least one week prior to the incident. Although the district court in this case has concluded that there was no ineffective assistance of counsel in this case, there were material facts before the court that have never been adjudicated. Mr. Owens raised a colorable claim in the federal court. He provided the district court with sufficient, more than sufficient evidence that he had suffered from mental disease, not only before the time of the incident, but at the time of the incident. There are material facts in dispute, and Mr. Owens has never had the opportunity to have a hearing and present the evidence of his mental disease complaint. You're not contending that he was not competent to stand trial or was not competent at the time of the offense? No, Your Honor. That was adjudicated at the time of trial. Okay. So you are contending that somehow there's some mental problem that would do what? Would negate general intent, specific intent? What would it – what are you trying – what should have been – what defense should have been offered specifically that would have addressed the two counts in which he was convicted? The mental state defense would have negated the specific intent required of the two charges against him. But one of the charges I thought was general and one was specific. Is that wrong? The resisting arrest can be both specific and general intent, but making terrorist threats requires specific intent. And you say that this would have negated the general intent aspect? Is that the defense? The specific intent, Your Honor. I'm sorry. The specific intent? That's correct. Does battery require specific intent? The two charges of required specific intent, I don't know about battery, because that was not one of the charges necessarily against him, although that could be an element of resisting arrest. The district court had before it quite a bit of evidence to indicate that Mr. Owens had been severely debilitated for many years and that there was significant evidence to show that at the time of this incident, he was in fact experiencing the manic phase of his bipolar disorder. In Dr. Kajal Sharma's post-conviction report to the court, Dr. Sharma believed that Mr. Owens' behavior at the time of the incident reflected the fact that his behavior and his cognition at that time was caused by a manic episode and that his behavior was in fact dictated by the serious mental illness he had been experiencing at that time. When the trial court determined that Mr. Owens was competent to stand trial, and in fact, prior to trial there was at least one psychiatrist who concluded he was not competent, but nonetheless, when the court is determining whether the defendant is competent, what you're looking at at that point in time is the defendant's present mental health. But when you're trying to investigate whether or not a mental state defense was available at the time of the trial, that's something that was not considered here. During the time of the trial ---- Yes, Your Honor, it was. But the mental examination at that point was for the purpose to determine whether Mr. Owens was presently competent to stand trial. And it's my understanding that for most of the preliminary hearing and the pretrial hearings and at the time of trial, he was taking psychotic medication. And when ---- Was the counsel aware of all of this? Yes, Your Honor, he was aware of this. And that's ---- And the claim is that he didn't assert any of it. No, he didn't. The trial counsel ---- and there were two trial counsels in this case. There was an initial public defender who truly believed that there were mental state defenses here. But then at the time when the trial came up, a second public defender had been appointed at that time and apparently hadn't fully analyzed his file or at least didn't take the necessary preparation to investigate the availability of a mental state defense. What happened was with this public defender is after the conviction, he retains Dr. Sherma, who had initially been appointed by the court on an emergency basis to determine whether Mr. Owens was competent and whether or not he should take psychiatrist, who then determines after the fact that indeed it appears Mr. Owens was suffering from a mania at the time of the incident, and this was the direct result of both his behavior and his cognition at the time of the event, and that in fact the mental state was available. The thing is ---- Well, as to the second public defender, wasn't it obvious during the course of trial that this guy had some imbalance? Indeed it was. And he stated so on the record because it was right before the trial started that there was an outburst in the court room. But the claim is that he was ineffective because he didn't assert it to the trial court. What the trial lawyer asserted and questioned was whether or not Mr. Owens was competent to stand trial. So the only thing that he was looking at at that point in time was his mentality at the time of trial. And at that point, Mr. Owens was medicated. However, at the time of this incident, that's what was never explored in this case. Now, the government argues this was a tactical decision because had that evidence come in, all this prior evidence of the prior batteries would have come in as well? The problem is there are so many material facts to appellant's claim that cannot be adjudicated with the record before the district court because there's never been a hearing. And we can only assume or only speculate that there was a tactical decision by Mr. Owens' trial counsel when, in fact, there is nothing in the trial record, when there is nothing in the trial files to suggest that he ever investigated the availability of a mental state defense to begin with. And he could not make a rational, strategic determination not to offer a mental state defense if he hadn't investigated it to begin with. What we should really do is have a half-day trial in this case to bring on the appellant's experts to determine the severity and extent of his mental state at the time of this incident and the impact and severity on his cognition and whether or not he could even understand the reality of the situation at that point in time. The government also makes the argument that the mental disease that your client has has a tendency to make him more violent. Had that evidence been introduced, it would only support the fact that he had committed battery and made threats. Again, this is something that we can only speculate about because we don't have an expert's opinion here, number one, to tell us exactly what mental diseases we're talking about, the severity of those mental diseases and their availability at the time of the incident, the impact about whether Mr. Owens was taking medications at the time. And so we can only – that argument cannot be substantiated with any degree of reliability. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court. John Yang, Deputy Attorney General. On behalf of the Warden, this claim was presented to the State court, specifically the Superior Court of Los Angeles, and the Superior Court we would submit had reasonably rejected this claim because regardless of how alluring a mental defense in this case was, certainly there were compelling reasons that appear on the record that counsel had obviously taken into account and not – Obviously taken into account. I mean, isn't this case – isn't the question why did counsel do what he did, and how do you know that without asking him? Well, Your Honor – It's true that there could be a tactical decision, and you can point out three or four reasons he might have made that. It's also true that sometimes people do things for other reasons. Doesn't the outcome depend on – at least even from your view – on why counsel did what he did? Well, Your Honor, I think it will be helpful – it would be helpful if counsel had stated something to that effect on the record. However, in this case, I submit it's not necessary because, first of all, in applying Strickland, Strickland says that we presume that counsel's actions are reasonable. Now, applying that presumption to this case, we know that counsel is aware of the Petitioner's mental history. He had a lot of notes. He had a lot of, you know, psychiatric reports. And yet he did not present a defense. So why do you leap from there to the conclusion that the other – that he held back on a mental state defense because he made the tactical choice based on his concern that then the State would introduce evidence of prior crimes? How do you get from his knowledge of the mental state to the evidence of prior crimes would come in? Well, we're saying, number one, that we apply the presumption – the presumption that his actions are reasonable. Okay. I'm with you on the presumption. Let's apply the presumption. But how do you get from there to the reason was the concern over the prior convictions? Well, the presumption has a lot to do with my subsequent argument and response to that. Can we do a logical argument instead of just an assumption here, a presumption? I mean, we presume he has a tactical choice. Now what? Why do we presume that it was this tactical choice? Because of what he knew. Because he knew very well that it was all there. There has to be a good reason. Under Strickland, we presume that there was a good reason. We presume that it – But then there would never be any deficient performance cases at all if you just go with the presumption. Well, if there does not appear to be good tactical reasons on the record, then there's no good reason for counsel to not – That's what I'm asking you. Why was the concern over the prior convictions a basis for a sound? Would they necessarily have come in? Yes, they – yes. Then why? Your Honor, first of all, one of the charges was a terrorist threat that was made against the victim in this case in the domestic violence situation. And certainly 1109 – So the kid gets really mad at his friend and says, I'm going to kill you? That's a terrorist threat? Your Honor, the label – Yes. You don't have to go that far. You can find California cases that are much worse than that. Seriously? Yes. Okay. All right. Let's go there. Let's go back to the other side. Right. So terrorist threats. And so I could think of evidence code section 1109, which says that, you know, that prior instance of domestic violence can come in to show that, in fact, there was this propensity to commit this same type of domestic violence involved, this type of conviction. Doesn't that only prove the same thing, that he did it for the same reason, that if your defense is that he has this mental condition, the fact that he did it once before as a result of the same mental condition? I mean, what does it prove to show that he's got a mental condition from which explains why these threats occur? I mean, he doesn't – he's not capable when he makes threats. So you say, well, he not only did it once, he did it twice. How does that make it any worse? Your Honor, I'm not saying that it's not a viable defense. I'm saying that the counsel chose technically to not defuse it, because if you – if we introduced evidence of prior battery or prior instances of domestic violence, it would prejudice him in the eyes of the jury. And not that the jury should in any way consider any factors that is improper. But when defense counsel choose tactics – But beyond getting a determination that the defendant was capable of standing trial, he didn't go on and develop, get a report saying, here is the kind of defense you could offer and then reject it, because he thought that wasn't good enough. He didn't explore that at all. What the – he or she, I don't remember. Yeah. He, Mr. Broderick. Yeah. But he – he actually has all these – actually, there were at least – there was no less than four reports that were prepared. Now, I know that counsel – For competency. I know. Counsel's point is valid, that they were prepared for competency. But I would submit that if we examined those reports closely, I mean, these psychiatrists, when they prepare these reports, they don't just limit it to exclusive area. They go through the psychiatric history. They make a diagnosis. So there was enough in there for counsel to make a well-informed decision as to whether mental defense is a viable defense in this case. And, in fact, there's a – there's diagnosis everywhere in these reports, schizoaffective, antisocial, bipolar disorders. And these were all things that were there for counsel to make a well-informed decision. Granted, there were no psychiatric – no psychiatrists who said that there was a lack of mental – mental state, but there was actually enough for a well-informed decision, not a fully – fully – to the fullest extent possible, but he knows what he was suffering from. And so that was enough for him to actually make an assessment. And in making that assessment, he took into account that there were these prior convictions which could prejudice the jury against his client. And, number two, Your Honor, I've stated in my brief that bipolar disorder is a disorder that makes a defendant or the patient hyperaggressive, more aggressive than usual. And, therefore, that's – in this case, it certainly wouldn't have helped him because the intent issue in this case were intent to – to threaten other people, intent for his utterances to be understood as a threat. Somebody who's mad, who's hyperaggressive, certainly would have been more likely to have intended for his utterances to be threatening. And there was also the intent to obstruct the officer's performance of their duty. Somebody who is hyperaggressive would be mad at the officers that he would want to obstruct more likely than the usual person to obstruct. And so counsel could have taken those into account and made a tactical decision.  Ginsburg-McGill. Counsel, the problem I still have is, you know, all of what you're saying sounds reasonable. But how do we know what happened here? Verrilli, Jr. I think it's a reasonable inference that can be made because he – he just – he knows so much about this – this person's past history. It was right there. And he also called for competency to be held, because if we – if we look at the record, I think it was during jury voir dire that his client made an outburst – petitioner made an outburst saying, well, isn't this a three-strikes case? This is right in front of the jury. Then counsel then asked for the court to – to conduct a competency hearing. The court then informally enlisted Dr. Sharma to come and help evaluate the situation. And Dr. Sharma said that he was competent. So counsel was well aware – well aware of this person's past mental history, yet he chose not to present it. And Strickland says we need to presume there are good reasons. And we look at these good reasons that jumped out from the record – really jumped out from the record. They're very apparent. And if I can go back to that – one other thing about introducing mental – this bipolar disorder, because this is a domestic violence situation. And counsel could also reasonably assume that if – if this is a domestic violence situation, this guy is a crazy person. What if the jury then – then hears evidence that this person is a crazy person? He's stalking his girlfriend. Oh, my God. What will he continue to do if we don't lock him away or put him away? These are all concerns that counsel – that defense counsels always make whenever choosing some type of defense. The jury didn't get a three-strikes instruction. That's imposed as part of sentencing. Right. Right. And the jury certainly didn't know – didn't know how long he was going to be put away. But if they acquit him, he's certainly not going to be put away for any time. So they want to put him away. That's what I'm suggesting, that that's one of the considerations that counsel may have in making these tactical decisions. And these are just – Well, is it inevitable if he gets into the psychiatric history that priors are going to be discussed by the psychiatrist? Your Honor, I don't know. That would have to play out in trial. I mean, there could be 352 motions saying, oh, that has to be excluded. I'm going to limit it to certain aspects of the testimony. But certainly the prosecution was ready to introduce these priors, and he had the basis to do so in the evidence code section 1109 to show propensity. And also, one more thing is that there were reports, actually at least two psychiatrists report that showed that this person was actually malingering, actually faking his delusions and faking his mental illnesses. So if a mental defense was presented – if a mental defense was presented, then the prosecution then could bring in these experts to testify that he was malingering. That would not bode well for the defense case. That would undermine their credibility. So counsel could have considered all those situations and not – and say, why chance it? Why risk it? Why don't we just go straight and attack the elements? Thank you, counsel. Time's up. Thank you. Counsel, we'll give you a minute or two. Thank you. Just really quickly with the allegation that two psychiatrists found malingering, that's not true. And in fact, what happened was the State court, when the State court considered whether or not or was concerned about whether or not Mr. Owens was competent to stand trial, one of the reasons why the State court retained psychiatrist Dr. Sharma was because Dr. Sharma, as represented by the court, was good at detecting malingering. And Dr. Sharma never in fact detected malingering. Just the opposite came to conclude that Mr. Owens was psychotic and suffered from bipolar disease. The whole problem, however, with Respondent's argument at this point is that it's all nothing but speculation. Well, the question is, counsel's position is that if there are enough reasons in the record so that you can see that a reasonable lawyer might have made a tactical decision, that that's sufficient given the presumption, that when you have a record that shows reasons why he might not pick that defense, that's sufficient and you don't need an evidentiary hearing. Your position seems to be that what you need is an explanation from counsel. Why did he actually do it? Do you have – what's your best authority that counsel's wrong and you're right? Because the only thing that we can do at this point – No, no, case authority, I mean. I'm sorry. I can't cite a case to you at this point, Your Honor. All right. I didn't cite cases for today. But the one thing I can say is in this record, there is absolutely nothing to substantiate the fact that the trial counsel in this matter did anything to investigate and reject a mental state defense. Counsel, isn't under AEDPA, aren't you – there's – AEDPA says a standard for when you're entitled to an evidentiary hearing. That's correct. And what is it? I'm sorry? And what's the standard? The standard is three – three circumstances have to be met. And those circumstances were met in this case. First of all, the Petitioner must allege a colorable claim with sufficient evidence to support that claim, and that happened here. There must be material facts which are in dispute, and there must – there must not have been a hearing at the State level. Was there a hearing at the State level? No, Your Honor, there was not. There has never – Is that your authority for getting one here? Yes. I just don't know the case that supports that. There has never been a hearing at the State level with respect to these issues. And as such, we cannot determine whether counsel's failure to investigate and present a mental state defense was the product of constitutional ineffectiveness or an informed tactical decision. All right. Thank you, counsel. Thank you. Court will take a brief morning recess before the next oral argument. All rise.
judges: Reinhardt, Beezer, Wardlaw